IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Terry B.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 6:21-cv-01438-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Terry B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## PROCEDURAL BACKGROUND

Born in December 1959, plaintiff alleges disability beginning January 11, 2019,[2] due to bipolar disorder, post-traumatic stress disorder, borderline paranoid schizophrenia, and chest pains from a pacemaker due to cardiac murmurs. Tr. 296. His applications were denied initially and upon reconsideration. Tr. 152, 167. On November 19, 2020, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 105-138. On December 2, 2020, the ALJ issued a decision finding plaintiff not disabled. Tr. 20-34. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had engaged in substantial gainful activity from September 2019 through December 2019, but that there had been a continuous 12-month period during which plaintiff did not engage in substantial gainful activity. Tr. 22-23. At step two, the ALJ determined the following impairments were medically determinable and severe: "arrhythmias/sick sinus syndrome with surgical insertion of a pacemaker; diabetes; coronary artery disease; obesity; hypertension; major depressive disorder; history of substance use disorder; PTSD; bipolar disorder; borderline personality disorder; anxiety disorder; and adjustment disorder." Tr. 23. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 23-24.

---

[2] Plaintiff initially alleged an onset date of April 3, 2018, but amended it to January 11, 2019, the date of his application. Tr. 265.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a range of medium work, but with the following non-exertional limitations: "he can frequently climb ramps or stairs, but only occasionally climb[] ladders, ropes, or scaffolds. He must avoid exposure to extreme cold or to workplace hazards…[h]e can tolerate no more than frequent interaction with the public or co-workers. He can tolerate no more than occasional interaction with supervisors." Tr. 25.

At step four, the ALJ determined plaintiff was able to perform some past relevant work. Tr. 27. The ALJ made an alternative finding at step five that, based on the VE's testimony, there existed a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as busser, floor cleaner, or laundry worker. Tr. 27-28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to account for his left-thumb osteoarthritis in determining his residual functional capacity; (2) discrediting his subjective symptom statements; (3) rejecting the medical opinion of Kyle Hunter, QMHA; and (4) failing to consider lay witness testimony. Plaintiff also argues (5) that, taking into consideration new evidence he submitted to the Appeals Counsel following the ALJ's decision, the ALJ's decision is not supported by substantial evidence.

I. **Plaintiff's Left-Thumb Osteoarthritis**

Plaintiff contends the ALJ erred by failing to consider all his functional limitations—specifically those related to the use of his left hand—when assessing his RFC. When assessing the RFC, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir.

2017) (quoting *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)); *see also* 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity"). An RFC which fails to consider all a claimant's impairments is "defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

The ALJ need only consider impairments which are "medically determinable." *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) ("Where the ALJ has found a severe medically determinable impairment at step two of the sequential analysis, all medically determinable impairments must be considered in the remaining steps of the sequential analysis") (internal quotation and citation omitted). An impairment is medically determinable if it is diagnosed based upon "objective evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. The impairment must also have lasted for a continuous period of at least 12 months to meet the durational requirement. 20 C.F.R. § 404.1509; 416.909. While the ALJ is not obligated to include functional limitations related to all non-severe impairments, they must "actually review[] the record and specif[y] reasons supported by substantial evidence for not including the non-severe impairment." *Medlock v. Colvin*, CV 15-9609-KK, 2016 WL 6137399, at *5, *judgment entered*, CV 15-9609-KK, 2016 WL 6126254 (C.D. Cal. Oct. 20, 2016) *citing Hutton v. Astrue*, 491 Fed.Appx. 850, 851 (9th Cir. 2012).

Here, there is evidence in the record to support that plaintiff's left-thumb osteoarthritis was a medically determinable impairment which met the 12-month durational requirement. On July 16, 2018, Dr. David Bear diagnosed plaintiff with "advanced MP osteoarthritis with resting apex

Page 4 – OPINION AND ORDER

radial deviation" following an x-ray diagnostic examination. Tr. 83-85.[3] Dr. Bear noted that the pain associated with this condition would prevent plaintiff from doing his job at Jasper Plywood and recommended joint fusion surgery. *Id*. On December 12, 2019, plaintiff suffered a contusion injury to his left thumb and required emergency services. Tr. 657. There, again, an x-ray examination showed osteoarthritic changes in his left thumb joint. Tr. 658. On December 17, 2019, plaintiff saw Colleen Truman, FNP, who placed him on work restrictions including "no use of left hand." Tr. 731.

Over the course of the following year, plaintiff repeatedly reported pain—often "severe"— in his left thumb. Tr. 67, 76, 545, 716-717, 739, 747, 761. On June 4, 2020, Dr. Luci Kovacevic examined plaintiff and found that he was mildly tender over the left thumb IP joints, that pain was worse with flexion and extension, and that his left thumb pinch grip strength was weak. Tr. 716-718. Dr. Kovacevic continued plaintiff's "no use of left hand" work restriction, clarifying that the restriction was related to the plaintiff's osteoarthritis, not the contusion injury. *Id*. Plaintiff testified at his November 19, 2020, hearing that he still has problems with his left hand. Tr. 124. On December 3, 2020, plaintiff again saw Dr. Bear for "ongoing left thumb pain," which the doctor attributed to "severe thumb MP joint arthritis." Tr. 76. In sum, several medically acceptable sources diagnosed and documented plaintiff's left-thumb osteoarthritis[4] based on objective

---

[3] Tr. 36-104 are comprised of records submitted to the Appeals Counsel following the ALJ's decision. Although the Appeals Counsel did not accept these documents into the administrative record, they are part of the record before the Court—submitted by defendant—and both parties cite to them without objection. *See* Pl.'s Opening Br. 7, 19; Def.'s Resp Br. 2, 14. The Court will therefore consider them.

[4] Defendant argues that plaintiff has conflated his contusion injury with his osteoarthritic condition, but plaintiff's assignment of error expressly refers to his osteoarthritis. Pl.'s Opening Br. 5. Accordingly, the Court's summary of the record above and its analysis here focus on this condition alone.

Page 5 – OPINION AND ORDER

diagnostic evidence, and the condition persisted for at least twelve months. Thus, the record supports that plaintiff's left-thumb osteoarthritis was a medically determinable impairment.

Yet, the only reference to plaintiff's left hand in the ALJ's decision is that plaintiff "related that he re-injured his thumb while working at the pipe factory that affected his ability to perform his job." Tr. 26. Despite noting this testimony, the ALJ neither rejected it nor did he incorporate it or any evidence regarding plaintiff's left hand into the RFC. In posing hypotheticals to the testifying VE, the ALJ did not identify any limitations arising from plaintiff's left-thumb osteoarthritis. Tr. 131-134. While the ALJ inquired about plaintiff's injury to his left thumb during the hearing, he did not address plaintiff's left-thumb osteoarthritis, despite plaintiff's counsel's reference to related medical records during the hearing. Tr. 113-115, 124.

Given the evidence in the record regarding plaintiff's medically determinable impairment to his left thumb, it was error for the ALJ to fashion an RFC that failed to take any related limitations into account without otherwise making any other findings regarding that impairment. Because the ALJ failed to consider plaintiff's left-thumb impairment, his RFC determination is not supported by substantial evidence in the record. Contrary to defendant's arguments, the error was not harmless. As outlined above, the record is replete with evidence that plaintiff suffered significant pain in his left thumb, that his treating providers attributed the pain to his osteoarthritis, and that they note that such pain may limit his ability to work.

## II.  Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting his testimony concerning the extent of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examin[ing] an individual's character" or propensity for truthfulness, but instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Here, plaintiff's function report identifies a number of subjective symptoms related to his disability. He claimed that he had a "hard time being around people" and that "when I'm cornered, I want to strike out." Tr. 276. He testified he had difficulty sleeping due to nightmares, would forget to shower due to memory loss, and sometimes would eat only once per day. Tr. 277-278. He claimed that he panicked when people get too close, did not get along with authority figures, and had a "hard time getting along with co-workers." Tr. 281. He handled stress "somewhat ok" with medicine. Tr. 282.

At the hearing, plaintiff testified that he did not have the energy to work for eight hours per day, and that he had daily chest pain episodes. Tr. 119-120. He testified that he would have to miss

Page 7 – OPINION AND ORDER

work because he would get tired, have chest pains, and then would not have any energy to work. Tr. 124. As to his mental health limitations, he testified that when stressed, he gets angry and "yells at people," including "just really intense arguments with a couple of the bosses." Tr. 123. Plaintiff testified that he felt depressed the "majority" of his days and that it affected his ability to get things done. *Id*. He also noted that his mental health issues had gotten worse over time. Tr. 124.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 26. The ALJ made no finding of malingering. The ALJ's reasoning[5] was different with respect to his physical conditions related to his heart versus his mental conditions. The Court addresses each in turn.

### A. Physical Impairments

With respect to plaintiff's physical impairments related to his heart, the ALJ appears to rely exclusively on medical records. First, the ALJ relies on medical records near in time to plaintiff's alleged onset date which note that plaintiff was awake, alert, oriented to person/place/time, had regular heart rate and rhythm, and myocardial perfusion stress imaging was normal at the time of

---

[5] Defendant argues that the ALJ's rejection of plaintiff's subjective symptom testimony is further supported by plaintiff's work activities, application for unemployment, as well as his daily activities. Def.'s Resp. Br. 7-8. However, while the ALJ discussed some of these facts at step two, these were not among the reasons the ALJ cited at step three for discrediting plaintiff's testimony in formulating the RFC. Thus, the Court's will not consider these reasons in its review of the ALJ's findings at step three. *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (court's review of the ALJ's decision must be "based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations") (internal citation omitted). It considers only the reasons articulated by the ALJ for rejecting specific testimony in formulating the RFC.

Page 8 – OPINION AND ORDER

his examination. Tr. 26; 458-460. Second, the ALJ relies on medical records from October 2020 which likewise show normal heart and pacemaker function and only "minor" coronary artery disease. Tr. 27; 767.

An ALJ may reject a claimant's symptom testimony if that testimony is *contradicted* by evidence in the medical record, *Kiss v. Kijakazi*, 20-15932, 2022 WL 1744058, at *1 (9th Cir. May 31, 2022), While an ALJ may also *consider* the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The medical records cited by the ALJ here contradict plaintiff's testimony that minimal exertion results in the type of fatigue and shortness of breath he has testified to. Specifically, the ALJ's citation to medical records documenting normal results following myocardial perfusion stress imaging contradicts plaintiff's testimony. As explained above, contradictory medical records are a legally sufficient reason to reject subjective symptom testimony. That reason is supported by substantial evidence here because a reasonable mind could accept that stress testing would likely result in abnormal results based on plaintiff's testimony regarding his fatigue and shortness of breath on exertion. The presence of normal results therefore directly conflicts with plaintiff's testimony. Accordingly, the ALJ provided clear and convincing reasons, supported by substantial evidence, to discredit plaintiff's testimony as to his physical impairments related to his heart conditions.

### B. Mental Impairments

Regarding plaintiff's mental health conditions, the ALJ provides two rationales for discrediting plaintiff's subjective symptom testimony: (1) that plaintiff's symptoms are not consistent with his medical records; and (2) that plaintiff's statement to Kyle Hunter QMHA that his chief complaint was "I need a job" and his application for three jobs is inconsistent with his testimony regarding his mental health symptoms. Tr. 26.

First, with respect to plaintiff's medical records, the ALJ cites instances in which providers noted that plaintiff was "alert," "pleasant," and "in no acute distress." *Id*. There is some evidence in the record that describes plaintiff's depression during the period of alleged disability as "mild," *see* Tr. 36, 482, 593, 598, 617, 630, 632, 636, or his mood/affect as normal. *See* Tr. 458, 494, 524, 527, 603, 763. But there are other notations which describe plaintiff's depression as "severe," *see* Tr. 36, 598, 613, 621, 630, or his mood/affect as nervous, anxious,

  or sad. *See* Tr. 482, 497, 500, 607, 618, 622, 732.

As the Ninth Circuit has explained in the context of mental health issues:

> [I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (internal citation omitted). An ALJ "may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects longstanding psychological disability." *Richard R. v. Comm'r, Soc. Sec. Admin.*, 3:19-CV-00918-MK, 2020 WL 4193114, at *4 (D. Or. July 21, 2020) *citing Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014).

Here, a holistic review of the record includes objective findings which support plaintiff's testimony. In addition to the instances which generally note that plaintiff's depression was "severe", and his mood/affect was anxious or sad, records which pertain more specifically to plaintiff's mental health conditions further support plaintiff's subjective symptom testimony. For example, in June 2020, plaintiff sought emergency services for a "mental health crisis." Tr. 600. He reported "feeling hopeless" and "recently was having increased thoughts of suicide and increased auditory hallucinations." *Id*. The emergency department referred plaintiff to a "transition team" for outpatient services. Tr. 603. During intake for those services, which included a mental health assessment, he was observed to be "anxious, depressed, tearful and hopeless," and assessed as having "severe" depression. Tr. 607-613. During the course of treatment, plaintiff's transition team case manager, Kyle Hunter, observed that plaintiff was "sad and remorseful" and that—while assisting plaintiff in obtaining medications and essential items from a Walmart shopping center— he had to facilitate exchanges between plaintiff and staff because plaintiff was "tearful" and "anxious." Tr. 621-622. On another occasion, Mr. Hunter noted that plaintiff's functional impairments included "difficulty meeting responsibilities, negative-self-talk, isolation, [and] suicidal ideation." Tr. 630.

These disregarded observations are more specific to plaintiff's mental health symptoms compared to the routine observations made in the course of physical exams related to—in many instances—plaintiff's various physical conditions. *See*, *e.g.,* Tr. 458, 482, 494, 524, 527. In any event, those general observations are, as noted above, inconsistent. Accordingly, viewed as a whole, the record lacks substantial evidence to support the ALJ's finding that plaintiff's subjective symptom testimony is contradicted by his medical records.

Second, the ALJ discounted plaintiff's symptom testimony based on the fact that plaintiff's chief complaint to Mr. Hunter was "I need a job," that plaintiff completed three job applications with the assistance of Mr. Hunter, and that plaintiff stopped showing up to his appointments with Mr. Hunter. Tr. 26; 632, 649. But the ALJ failed to acknowledge that plaintiff was homeless at the time and that Mr. Hunter was assigned to provide transition services to him. Tr. 611. In fact, plaintiff testified at his hearing that he was looking for jobs because he was tired of being homeless. Tr. 119. The purpose of the transition team services was to "assist [plaintiff] in navigating various community systems, following up with potential referral sources, and planning for stability in the community." Tr. 637. In the context of those services, as well as the references throughout documentation of that treatment of plaintiff's mental health condition and symptoms—summarized above—these records do not provide substantial evidence to support the ALJ's conclusion that they contradict plaintiff's symptom testimony.

As to his failure to continue treatment with Mr. Hunter, plaintiff testified that he stopped attending his appointments because his anxiety made it difficult for him to ride the bus to his appointments. Tr. 119. Further, plaintiff testified that he did not make it to appointments during this period of time because he "had a lot of mental issues going on," was homeless, and had difficulty remembering things. Tr. 112. Given the complete view of the record, the ALJ's reliance on plaintiff's statements and behavior related to his treatment by Mr. Hunter was misplaced.

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony as to plaintiff's mental health impairments. The ALJ's decision is reversed as to this issue.

**III.   Medical Opinion Evidence**

Plaintiff next asserts the ALJ improperly discredited the opinion of Kyle Hunter, QMHA. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§404.1520c(a)-(b); 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[6] *Kevin R. H. v. Show aul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.* An ALJ is "not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical." *Id*. (*citing* 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3)).

Here, Kyle Hunter, QMHA, provided a medical opinion as to plaintiff's condition and ability to work. Tr. 753-760. He opined that plaintiff would "not take criticism from other workers or a supervisor well" and that "he would not be able to maintain employment for long." Tr. 754. His symptoms "would be a barrier to maintaining even a low stress job." *Id*. He noted that plaintiff

---

[6] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

Page 13 – OPINION AND ORDER

exhibited extreme limitations to his ability to carry out complex instructions and interact appropriately with the public or with coworkers. Tr. 758. He also assessed marked limitations to plaintiff's ability to carry out simple instructions, make complex work-related judgments, interact appropriately with supervisors, and respond appropriately to changes in routine work settings. *Id*. Finally, he noted moderate limitations to plaintiff's ability to understand and remember instructions and mild limitations to his ability to make simple work-related decisions. *Id*. He believed that plaintiff's psychiatric problems would cause him to miss more than four days of work per month. Tr. 759.

Regarding the supportability factor, the ALJ found that Mr. Hunter's conclusions were not supported by the fact that plaintiff's chief complaint was "I need a job," Mr. Hunter's notation that plaintiff's diagnosis was "mild," and the fact that plaintiff's file had to be closed due to "no shows." Tr. 26. These findings are not supported by substantial evidence. Again, plaintiff's comments and Mr. Hunter's assistance with job applications was in the context of plaintiff's homelessness and Mr. Hunter's role as a "transition team case manager," responsible for helping plaintiff "navigat[e] various community systems" and "plan[] for stability in the community." Tr. 637. Moreover, the notation that plaintiff's diagnosis was "mild" during one visit is selective and ignores Mr. Hunter's numerous other observations regarding plaintiff's condition as well as other descriptions of plaintiff's diagnosis as "severe" and "severe daily." Tr. 621; 630. Finally, as discussed further above, plaintiff explained his failure to continue treatment with Mr. Hunter during the hearing. Tr. 119.

As to the consistency factor, the ALJ found that Mr. Hunter's opinions were "undermined" by the opinions of State agency consultants and September 30, 2020, medical records from Dr. Paula Bilder, MD, who assessed "moderate" symptoms of depression and observed that plaintiff's

Page 14 – OPINION AND ORDER

mood and affect were "normal." Tr. 761-764. However, as explained above with respect to plaintiff's subjective symptom testimony, a holistic review of the record reveals that, notwithstanding various routine observations that plaintiff's mood and affect were normal in a clinical setting, records more specific to his mental health condition document significant and ongoing issues with depression that support Mr. Hunter's conclusions.

Accordingly, the ALJ's discrediting of Mr. Hunter's medical opinion is not supported by substantial evidence.

### IV.   Third-Party Testimony

Plaintiff contends the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to reject Michael Dennis's third-party function report. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id.* (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See Id.* at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Mr. Dennis's third-party function report corroborates plaintiff's own reports regarding antisocial behavior, anxiety, and depression. Tr. 303-310. At step three, the ALJ did not discuss or discredit this function report. The parties disagree about whether the Commissioner's revised regulations require the ALJ to articulate germane reasons for rejecting lay witness testimony. The relevant regulation provides: "We are not required to articulate how we considered evidence from

nonmedical sources *using the requirements in paragraphs (a)-(c) in this section*." 20 C.F.R. § 404.1520c(d). "If ALJs were no longer required to provide any articulation as to how they considered lay witness statements, the additional language would be superfluous." *Jerri F. v. Kijakazi*, 1:20-4037-RMG-SVH, 2021 WL 3362227, *14 (D.S.C. July 29, 2021), *report and recommendation adopted,* CV 1:20-4037-RMG, 2021 WL 3396230 (D.S.C. Aug. 3, 2021). Thus, although the regulations no longer require the application of the requirements (a)-(c), they "do not eliminate the need for the ALJ to articulate analysis of lay-witness statements." *Jason R. v. Comm'r, Soc. Sec. Admin.*, 6:20-CV-01981-MK, 2022 WL 981329, *9 (D. Or. Jan. 21, 2022), *report and recommendation adopted,* 6:20-CV-01981-MK, 2022 WL 980880 (D. Or. Mar. 31, 2022). Particularly in light of plaintiff's abundant citations to courts that have held similarly, Pl.'s Opening Br. 21-23, and defendant's failure to provide any citations to courts that have held otherwise on this specific issue, the Court adopts the above reasoning and finds that the ALJ erred by failing to articulate germane reasons for disregarding Mr. Dennis's function report without comment.

Although Mr. Dennis's function report largely mirrors plaintiff's own, the ALJ's failure to provide germane reasons for disregarding Mr. Dennis's report is not harmless. As discussed above, the ALJ failed to provide legally sufficient reasons supported by substantial evidence for rejecting plaintiff's testimony regarding his mental impairments. Because Mr. Dennis's function report pertains to those same impairments, the ALJ's failure to articulate germane reasons for rejecting Mr. Dennis's testimony was harmful error.

**V.     PA Brunning**

Finally, plaintiff contends that the ALJ's decision is not supported by substantial evidence considering new evidence submitted to the Appeals Council. "When a claimant submits evidence

for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159–60 (9th Cir. 2012). [7]

Plaintiff contends that the ALJ's decision is not supported by substantial evidence in light of a treating source statement from Sebastian Brunning, PA-C, submitted to the Appeals Council following the ALJ's decision. In that statement, PA-C Brunning diagnosed plaintiff with "nicotine dependence, bipolar disorder, essential hypertension, mixed hyperlipidemia, presence of cardiac pacemaker, sick sinus syndrome, prediabetes, benign prostatic hyperplasia, atherosclerosis of native coronary artery of native heart [with] unstable angina, anxiety, insomnia, mild intermittent asthma, crushing injury of left thumb, [and] diarrhea." Tr. 12. He indicated that all of plaintiff's medical conditions "lasted or can be expected to last" at least twelve months." *Id*. As to plaintiff's limitations, he opined that plaintiff "will lie down/rest every hour for 30-45 minutes at a time due to extreme fatigue and exhaustion," would likely be off task 25% or more of the workday and would be prevented from working more than four days per month. Tr. 13-16.

---

[7] Here, the Appeals Council listed this additional evidence in its decision and found "[t]his additional evidence does not relate to the period at issue." Tr. 2. It did not exhibit the evidence and formally make it part of the administrative record. Tr. 5; *see Ruth v. Berryhill*, 1:16-CV-0872-PK, 2017 WL 4855400, *8-9 (D. Or. Oct. 26, 2017) (where the Appeals Counsel does not accept new evidence and make it part of the record, *Brewes* is distinguishable). This leaves the precise question before the Court unclear, as the evidence is not part of the administrative record, and plaintiff does not argue for a sentence six remand. *See* U.S.C. 405(g) (allowing remand where new evidence is submitted to, but not considered by, the Appeals Counsel). However, the evidence is contained in the record submitted by defendant, Tr. 12-16, and the parties do not dispute that the Court should consider this evidence consistent with *Brewes*. Pl.'s Opening Br. at 23; Def.'s Resp.Br. at 17. Accordingly, the Court will consider this issue as the parties have framed it pursuant to *Brewes*.

Page 17 – OPINION AND ORDER

However, PA-C Brunning did not begin treating plaintiff until January 10, 2021, after the alleged disability period. Tr. 12. There is no indication in this treating source statement that his evaluation of plaintiff pertained to the relevant period. Instead, all statements in the document are in the present tense. PA-C Brunning declined to indicate in the document when the limitations he identified may have started, other than that they had been present since he began treating plaintiff. Tr. 16. Because this evidence does not pertain to the period of disability at issue in this case, it cannot provide a basis for this Court to reverse the ALJ's decision.

## VI.   Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by (1) failing to consider plaintiff's left-thumb osteoarthritis in fashioning the RFC; (2) discrediting plaintiff's subjective symptom testimony regarding his mental health impairments, (3) discrediting the medical opinion

of Kyle Hunter, and (4) failing to consider, or provide germane reasons for discrediting, the lay witness testimony of Michael Dennis.

The record is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling mental impairments. On one hand, the record is clear that plaintiff's depression and anxiety are longstanding and have persisted at significant levels at times. However, the record is unclear as to the extent to which situational stressors may impact the severity of plaintiff's symptoms and the extent to which they limit his ability to work. In particular, the record appears to indicate that plaintiff's June 2020 "mental health crisis" may have been related to life stressors such as homelessness and being "kicked out by his girlfriend." Tr. 600. Whether and how plaintiff's condition has improved in the absence of these stressors is unaddressed in the record. Plaintiff also commented that his anxiety is "somewhat ok" with medication, leaving open the question of whether plaintiff's disabling condition could be or was managed with medication. *See* Tr. 282.

Moreover, there are some inconsistencies between plaintiff's testimony regarding his mental health and statements plaintiff made to treatment providers regarding the same. *See*, *e.g.*, Tr. 499 (plaintiff reported he is not depressed and never considered suicide); 526 (plaintiff reported feeling "not at all" depressed or hopeless and "not at all" as to "little interest or pleasure in doing things"); 551 (plaintiff denied depressed mood or anxiety). In sum, as noted earlier in this opinion, some waxing and waning of mental health symptoms is not unusual, but the record lacks detail on when and how much plaintiff's symptoms have done so and whether they are situational.

Finally, the record is ambiguous and conflicting as to plaintiff's left-thumb osteoarthritis. In particular, plaintiff's testimony at the hearing indicated that he did not have any issues with his thumb prior to his crush injury in December 19, tr. 114, 118, though his medical records indicate pain related to left-thumb osteoarthritis dating back to at least July 2018. Tr. 83-85. In addition, it

appears from the record that, in October 2018, plaintiff elected to proceed with a fusion surgery to treat his left-thumb osteoarthritis. Tr. 81-82. The record needs development as to the reasons for plaintiff's failure to follow through with this treatment and whether and to what extent he would have had any ongoing impairment and limitations if he had done so.

In light of the lack of a fully developed and unambiguous record, the Court will not credit the discounted testimony as true, and the appropriate remedy is to remand to the Commissioner for further proceedings to (1) consider any limitations related to plaintiff's left-thumb osteoarthritis on his RFC; (2) reconsider plaintiff's mental impairments in light of his subjective symptom testimony, the medical opinion of Mr. Hunter, and the lay testimony of Mr. Dennis in determining plaintiff's RFC, and (3) take any further action necessary to complete the administrative record and issue a new decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 14th day of December, 2022.


/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 20 – OPINION AND ORDER